**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| BRYAN SEGREST, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | ) | Case No. CIV-24-795-D |

## ORDER

Before the Court are the following cross-motions for summary judgment: (1) Plaintiffs Bryan Segrest and Rebecca Segrest's Motion for Summary Judgment [Doc. Nos. 39, 40][1], and (2) Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [Doc. No. 37]. Defendant filed a Response [Doc. No. 47] to Plaintiffs' Motion, to which Plaintiffs filed a Reply [Doc. No. 49]. Plaintiffs filed a Response [Doc. Nos. 46, 48] to Defendant's Motion. The Motions are fully briefed and at issue.

## BACKGROUND

Plaintiffs allege that their property suffered storm damage during the term of Plaintiffs' home insurance policy issued by Defendant. Rebecca Segrest first submitted a property damage claim on September 2, 2023, and reported the date of loss as a spring hailstorm that occurred on April 28, 2023. However, no hailstorm occurred near Plaintiffs'

[1] Citations to the parties' filings reference the Court's CM/ECF pagination at the top of each page.

property on April 28, 2023. Rather, the hailstorm that occurred at Plaintiffs' property closest to April 28, 2023, was on April 19, 2023.

Upon inspecting Plaintiffs' property, Defendant's third-party adjuster Carlos Martinez found that "there is covered hail damage to the soft metals of your roof and interior damage of your home ceiling stain," but did not find covered hail damage to the shingles on Plaintiffs' roof. [Doc. No. 37-4, at p. 1]. Rather, he found that there was "wear, tear, and/or deterioration on the composition shingles" on the roof, which was not covered by the Policy. *Id*. Ultimately, Defendant concluded that the estimated cost for the covered damage did not exceed Plaintiffs' deductible, and so no payment was issued.

Thereafter, Plaintiffs filed this action, alleging that Defendant breached its contract with Plaintiffs by failing to pay for the damage to their roof as it is covered damage under the Policy. Further, Plaintiffs allege that Defendant breached its duty of good faith and fair dealing when it misinterpreted and misapplied the terms and conditions of the Policy to purposefully, wrongfully deny their claim. Plaintiffs also allege that Defendant breached its duty of good faith and fair dealing by conducting a sham investigation when it ignored evidence that supported a finding that the damage was covered under the Policy.

In the motions at issue, Plaintiffs and Defendant seek summary judgment in their favor and against the other. Specifically, Plaintiffs seek summary judgment with respect to their claims of breach of contract and bad faith. Defendant seeks summary judgement with respect to Plaintiffs' claims for breach of contract, bad faith, and punitive damages.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Id.* at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light

most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross-motions for summary judgment, the Court is entitled to assume "no evidence needs to be considered other than that filed by the parties." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

**UNDISPUTED MATERIAL FACTS[2]**

Plaintiffs' property was insured by Defendant, under Policy No. 36-CJ-B557-8 ("Policy"). [Doc. No. 37-1]. The Policy covered accidental direct physical loss to the property; and excluded coverage for various perils, to include "wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown." *Id.* at p. 27-30. The Policy also included a Suit Against Us clause, which provides:

> 6. **Suit Against Us.** No action will be brought against ***us*** unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage. However, if the cause of loss or damage is burglary, theft, larceny, robbery, forgery, fraud, vandalism, malicious mischief, confiscation, wrongful conversion, disposal or concealment, the action must be started within two years from the time the cause of action accrues.

*Id.* at p. 37. The Policy was in effect from November 1, 2022 to November 1, 2023. *Id.* at p. 4.

---

[2] This statement includes material facts that are supported by the record and not opposed in the manner required by Fed. R. Civ. P. 56(c)(1) and LCvR56.1(d). All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to Fed. R. Civ. P. 56(e)(2) and LCvR56.1(e).

Mrs. Segrest reported a hail damage claim on or about September 2, 2023. [Doc. No. 37, at p. 9, ¶ 7]. The "facts of loss" section in Defendant's claim file reads: "Hail; Spring hail storm." [Doc. No. 37-3, at p.13]. Hail is listed as the probable cause. *Id*.

The claim file reflects that Mrs. Segrest provided a date of loss as April 28, 2023, when she reported the damage to Defendant. *Id.*; [Doc. No. 46-7, at p. 7], [Doc. No. 48, at p. 27]. On the day she submitted the claim, an AccuWeather report was generated in the claim file, which "provides three years of hail history based on the Date Reported and Loss Location . . ." [Doc. No. 37-3, at p. 14]. The AccuWeather report provides:

| Date of Hail | Hail Size (inches) |
|---|---|
| 08/07/2023 | 1.0 |
| 07/13/2023 | 1.25 |
| 07/10/2023 | 1.0 |
| 05/12/2023 | 1.0 |
| 04/19/2023 | 1.25 |
| 09/03/2022 | 1.0 |
| 08/28/2022 | 1.0 |
| 06/05/2022 | 1.0 |
| 05/20/2022 | 1.0 |
| 05/02/2022 | 0.75 |
| 11/10/2021 | 1.0 |
| 09/30/2021 | 1.0 |
| 07/26/2021 | 1.0 |
| 07/10/2021 | 1.0 |
| 05/27/2021 | 1.0 |

*Id*.

Defendant hired external Third-Party adjuster Carlos Martinez to inspect Plaintiffs' home on October 3, 2023. [Doc. No. 37, at p. 10, ¶ 9]. As noted in the claim file, Mr. Martinez inspected all roof slopes and found "NO hail related damage to any slopes . . . The roof displays evident signs of normal wear and tear but no hail d[amage]." [Doc. No. 37-3, at p. 8]. Additionally, Mr. Martinez found that there was "hail damage to metal valleys, turbine vents and collar vents." *Id.*

On or about October 4, 2023, Plaintiffs general contractor, On-Point Construction Management ("On-Point") sent Defendant photographs of Plaintiffs' roof depicting the alleged hail damage. [Doc. No. 48, at p. 6, ¶ 10 (citing Doc. No. 39-9)].

Defendant sent Plaintiffs a partial denial letter dated October 8, 2023, in which it explained that "there is covered hail damage to the soft metals of your roof and interior damage of your home ceiling stain." [Doc. No. 37-4, at p. 1]. However, the letter also provided that there was "wear, tear, and/or deterioration on the composition shingles on your roof. [But], [d]amage resulting from this cause of loss is not covered by your policy." *Id.* Defendant concluded that although the property had suffered some covered damage under the Policy, the estimated cost to repair was less than the applicable deductible. *Id*. The letter identified the date of loss as April 19, 2023. *Id.* The letter also included the Policy's Suit Against Us clause. *Id.* Because Defendant concluded that the estimated cost to repair the covered damage did not exceed Plaintiffs' deductible, Defendant did not issue any payment.

Defendant sent a follow-up letter dated October 10, 2023, stating that "we have completed our evaluation of your claim." [Doc. No. 37-6]. Again, the letter included the date of loss as April 19, 2023. *Id.* Despite Defendant finding that all 122 linear feet of the valley metal on Plaintiffs' roof had sustained covered damage, the estimate for repair did not include the cost for manipulating or removing and replacing the shingles that surrounded the valley metal. [Doc. No. 40, at p. 9, ¶ 35]. The replacement of the valley metal cannot be accomplished without at least manipulating the shingles that cover the edges of the valley metal. *Id.* at ¶ 37. Moreover, the letter failed to include an estimate for

the additional cost associated with the steepness of Plaintiffs' roof. [Doc. No. 41, at p. 75-76].

On November 3, 2023, Plaintiffs sent Defendant more photos of the alleged damage to their roof that On-Point took, and On-Point's estimate to fix the damage. [Doc. No. 48, at p. 7, ¶ 13 (citing Doc. No. 39-12)]. Defendant sent Plaintiffs an email informing them that it had received and reviewed On-Point's photographs. [Doc. No. 37-7]. Defendant also provided that On-Point's photos were consistent with the prior photos it had reviewed and stated that "[a] partial denial letter was sent [to] the insured on October 8, 2023." *Id.*

On February 21, 2024, Plaintiffs retained Wayne Schwartz of Schwartz Public Adjusting, LLC, to assist them with their claim. On February 26, 2024, Defendant received a Letter of Representation from Mr. Schwartz, in which he identified April 19, 2023, as the date of loss. [Doc. No. 37-9]; [Doc. No. 37, at p. 11, ¶ 16].

On April 3, 2024, Mr. Schwartz faxed Defendant a letter identifying the date of loss as April 19, 2023, and requesting "an additional period of time beyond the 1yr. anniversary date of the loss to get the claim properly handled." [Doc. No. 37-10]. On April 9, 2024, Defendant sent Mr. Schwartz a letter identifying April 19, 2023 as the date of loss and directed him to Defendant's partial denial letter dated October 8, 2023. [Doc. No. 37-11]. On April 11, 2024, Mr. Schwartz responded to Defendant's letter dated April 9, 2024, and identified the hail damage as having occurred on April 19, 2023. [Doc. No. 46-2, at p. 2]. On April 26, 2024, Defendant sent Mr. Schwartz another letter denying his request for an extension or tolling of the limitations period as provided in the Suit Against Us clause and reiterating the basis for the denial as stated in the October 8th letter. [Doc. No. 37-13].

On June 14, 2024, Plaintiffs filed their Petition. After obtaining leave of Court, Plaintiffs filed an Amended Petition and identified April 19, 2023, as the date of loss. [Doc. No. 20]. Plaintiffs did not allege that the date of loss occurred on any other day. *Id.*

**DISCUSSION**

Because this case was removed from state court based on diversity jurisdiction, Oklahoma law applies to determine the substantive rights of the parties. *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005) ("A federal court sitting in diversity must apply state law as propounded by the forum's highest court.").

**I. Breach of Contract Claim**

Defendant argues that it is entitled to summary judgment on Plaintiffs' breach of contract claim because Plaintiffs claim is time-barred by the Policy's Suit Against Us clause. Specifically, Defendant argues that Plaintiffs' claim is time barred because they did not file their lawsuit within one year of April 19, 2023. Plaintiffs contend that their breach of contract claim is not time-barred because it was filed within one year of the date of loss. Specifically, Plaintiffs argue that the storm that damaged their home could have been a storm that occurred on July 13, 2023 or a different storm that occurred in the spring or summer of 2023, and thus, they filed within a year of the loss. Alternatively, they argue that Defendant waived its right to invoke the Suit Against Us clause as a defense and should be estopped from relying on that clause to bar their claim.

The Policy contains a "Suit Against Us" clause, which is a one-year suit limitation provision. The Suit Against Us clause provides, in relevant part, that "[a]ny action by any party must be started within one year after the date of loss or damage." [Doc. No. 37-1, at

p. 37]. Such provisions are permitted under Oklahoma law. *See* Okla. Stat. tit. 36, § 3617; *Wagnon v. State Farm Fire & Cas. Co.*, 1997 OK 160, 951 P.2d 641, 644 (finding that, under § 3617, property insurance "can be limited to a one-year period in which to file an action")

**A. Plaintiffs filed the lawsuit beyond the one-year limitations period.**

The record before the Court and Plaintiffs' representations to the Court show that their date of loss occurred in April 2023. Indeed, Plaintiffs concede that the claim file "shows Mrs. Segrest provided a date of April 28, 2023, in order for State Farm, to process the 'new' claim . . ." [Doc. No. 48, at p. 27]. There was no storm which produced hail near Plaintiffs' home on April 28, 2023. However, the closest date in which a storm did produce hail near Plaintiffs' home was April 19, 2023. [Doc. No. 37-3, at p. 14]. Thus, at all times during the investigation and handling of Plaintiffs' claim, Defendant and Plaintiffs treated April 19, 2023, as the date of loss.

Indeed, Defendant and Plaintiffs' agents identified April 19, 2023, as the date of loss multiple times in their written correspondences with each other. [Doc. Nos. 37-4, 37-5, 37-6, 37-9, 37-10, 37-11, 37-13, 46-2]. At no point did Plaintiffs inform Defendant that they believed the date of loss may be a different date, or the loss could have been tied to a storm that occurred in the summer. Rather, Plaintiffs' adjuster specifically recognized that April 19, 2023, was the date of loss and requested an extension of the Suit Against Us Clause's one year limitation. [Doc. No. 37-10].

Moreover, it is undisputed that in Plaintiffs' Amended Complaint they represented to this Court that the date of loss was April 19, 2023, and did not identify any other date of loss. [Doc. No. 37, at p. 14, ¶ 29]; *see also* [Doc. No. 20, at p. 5].

Plaintiffs fail to provide sufficient evidence to create an issue of material fact to support their assertion that the date of loss was July 13, 2023. Indeed, the only evidence Plaintiffs rely on is the AccuWeather report, which shows that a hailstorm occurred on July 13, 2023. From this Plaintiffs speculate that their date of loss could be either April 19, 2023, July 13, 2023, or some other date in the spring or summer of 2023, but do not definitely state a date of loss. [Doc. No. 46-7, at p. 7] (Ms. Segrest's answer to Interrogatory No. 6: "It is my belief . . . that the damage to my house was caused either on April 19, 2023, or during a storm later that spring/summer."). This speculation is insufficient. *See Alcala v. Ortega*, 128 F.4th 1298, 1306 (10th Cir. 2025) ("[M]ere speculation, conjecture, or surmise cannot defeat a summary-judgment motion, because unsubstantiated allegations carry no probative weight in summary judgment proceedings. . . . If the nonmoving party provides insufficient evidence to support its factual assertions, we may accept as true the moving party's version of the facts, as supported by the evidence." (quotation and citations omitted)).

Accordingly, based on the record before the Court the date of loss occurred in April 2023, which is more than one-year prior to when Plaintiffs filed their breach of contract claim on June 14, 2024.

**B. Defendant did not waive and is not estopped from raising the one-year limitations period as a defense.**

Insurers can waive the contractual suit limitation period by leading the insured to believe it will pay the claim. *Barraza v. State Farm Fire and Cas. Co.*, No. 21-CV-0282-CVE-CDL, 2023 WL 359518, at *7-8 (N.D. Okla. Jan. 23, 2023). Waiver is determined by the insurer's actions prior to the expiration of the limitation period. See *Parrish v. Farmers Ins. Co., Inc.*, No. 21-CV-00280-GKF-SH, 2022 WL 3139750, at *8 (N.D. Okla. Aug. 5, 2022) (granting summary judgment based on a policy limitation where plaintiff offered "no evidence of [the insurer's] conduct during the period from the [claim] payment to expiration of the 'Suit Against Us' provision."). Courts look to whether the insurer continued to actively communicate assurances and investigate the claim up to the expiration of the limitation period. *See,* e.g., *Prudential Fire Ins. Co. v. Trave-Taylor Co.*, 1944 OK 272, 152 P.2d 273, 275 (holding that there was sufficient evidence of waiver to deny the insurer's demurrer to the evidence and deny the insurer's motion for directed verdict where the insurer continued active investigation and communication, before denying the claim when less than a month remained in the limitation provision); *Oklahoma Farm Bureau Mut. Ins. Co. v. Lay*, 1965 OK 5, 398 P.2d 506, 508 (affirming the district court's decision to submit the question of waiver to the jury where there was evidence that the insurer assured the insured it would pay for and repair all damage, but never made payment on the claim because there were intermittent negotiations for settlement of the claim); cf. *Barraza*, 2023 WL 359518, at *7 (ruling insurer did not waive the provision when it accepted the claim, paid the value, and requested additional information before it would consider a second inspection).

Plaintiffs contend that Defendant waived its ability to invoke the Suit Against Us clause's one-year limitation because it continued to negotiate with them beyond the deadline and did not close the claim until after the deadline. The Court disagrees. Defendant accepted in part and denied in part Plaintiffs' claim in October 2023. Plaintiffs disagreed with Defendant's conclusion and hoped that Defendant would reconsider. Defendant reviewed the additional images and information that Plaintiffs and their adjuster provided and consistently directed Plaintiffs back to Defendant's October 2023 denial letter, which quoted the Suit Against Us clause. These subsequent conversations are not negotiations, and do not create an issue of material fact as to whether Defendant waived the one-year suit limitation.

Moreover, Defendant did not inhibit Plaintiffs' ability to file their lawsuit in a timely manner. Indeed, Plaintiffs were not waiting on Defendant to determine whether their claim would be accepted or denied. Rather, Plaintiffs knew exactly what Defendant determined its liability to be, because it completed its assessment and found that the cost of the covered damage did not exceed the deductible. Furthermore, Defendant's failure to respond to Plaintiffs' adjuster's request to extend or toll the one-year limitation was not a representation to Plaintiffs that Defendant would agree to toll or extend the limitations period. Plaintiffs could have filed their suit within the one-year period, as required by the Policy, without prejudice to their ability to request that Defendant reinspect their roof, but did not.

Additionally, nothing in the Defendant's correspondence constitutes a waiver. Indeed, in its letter dated October 8, 2023, Defendant specifically provided the Policy's

"Suit Against Us" clause. [Doc. No. 37-4, at p. 2]. In its November 4, 2023 email and April 9, 2024 letter, Defendant referenced its October 8th letter. [Doc. Nos. 37-7, 37-11]. Defendant also provided the Policy's "Suit Against Us" clause in its April 26, 2024 letter. [Doc. No. 37-13]. Nothing in these letters indicates that Defendant waived the limitations period.

Accordingly, because Plaintiffs filed their lawsuit more than one year after the date of loss, Plaintiffs' claim is time barred pursuant to the Suit Against Us clause in the Policy. Therefore, Defendant's motion for summary judgment on Plaintiffs' breach of contract claim is granted.[3]

## II. Bad Faith[4]

Defendant argues that it is entitled to summary judgment on Plaintiffs' bad faith claim because its conduct and denial was reasonable as a legitimate dispute exists. Plaintiffs contend that Defendant is not entitled to summary judgment because the dispute is not legitimate, as Defendant at the outset wrongfully interpreted the Policy with the intent to deny Plaintiffs' claim and conducted a sham investigation. Rather, Plaintiffs contend that they are entitled to summary judgment because the evidence shows that Defendant acted in bad faith in denying their claim and conducted a sham investigation. Defendant asserts

---

[3] Because Plaintiffs' claim is time barred, the Court need not determine whether there is an issue of material fact as to whether Defendant breached the contract.

[4] Plaintiffs are permitted to pursue their bad faith claim even though their breach of contract claim is time barred. *See Parrish*, 2022 WL 3139750, at *9 ("Oklahoma courts have permitted plaintiffs to pursue a bad faith claim even though a breach of contract theory is time barred." (citing *Hayes v. State Farm*, 855 F. Supp. 2d 1291, 1301 (W.D. Okla. 2012))).

that Plaintiffs are not entitled to summary judgment for the same reasons that it argues it is entitled to summary judgment.

Under Oklahoma law, an insurer has an implied duty to deal fairly and act in good faith towards its insured, and the violation of that duty gives rise to an action in tort. *Christian v. Am. Home Assur. Co.*, 1977 OK 141, 577 P.2d 899, 904; *see also Badillo v. Mid Century Ins. Co.*, 2005 OK 48, 121 P.3d 1080, 1093 (recognizing an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received."). To succeed on a claim for the violation of the duty of good faith and fair dealing, a plaintiff must prove four elements: "(1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury." *Ball v. Wilshire Ins. Co.*, 2009 OK 38, ¶ 21, 221 P.3d 717, 724.

"[A]n insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute" is well-established. *Gov't Emps. Ins. Co. v. Quine*, 2011 OK 88, ¶ 15, 264 P.3d 1245, 1249; *see also Ball*, 221 P.3d at 725; *Brown v. Patel*, 2007 OK 16, 157 P.3d 117, 126-27. "However, when presented with a claim by its insured, an insurer must conduct an investigation reasonably appropriate under the circumstances' and 'the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Newport v. USAA*, 2000 OK 59, ¶ 10, 11 P.3d 190, 195 (citation omitted). An insurer's duty "to *timely* and *properly* investigate an insurance claim is intrinsic to an insurer's contractual duty to *timely* pay a valid claim." *Brown*, 157 P.3d at

122 (emphasis in original). "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [an] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, ¶ 21, 637 P.2d 583, 587.

Upon consideration of the summary judgment record, the Court finds that genuine disputes of material fact preclude summary judgment on the issue of bad faith. Plaintiffs have presented minimally sufficient facts from which reasonable jurors could find that there was not a legitimate dispute and Plaintiffs were owed under the Policy, and Defendant did not conduct a reasonable investigation under the circumstances.

Indeed, in arriving at its decision to deny Plaintiffs' claim, Defendant used a definition of "hail damage" that was not included in the Policy. Moreover, there is minimal evidence from which a reasonable juror could find that the definition Defendant used is not the ordinary common meaning of hail damage, but rather a pretextual definition used to deny Plaintiffs' claim. There is also sufficient evidence to create an issue of material fact as to whether Defendant refused to consider pertinent facts and instead selectively gathered facts to deny the claim, causing the investigation to be inadequate. Specifically, Plaintiffs point to Defendant's failure to include in its estimate the repair for the shingles that surround the valley metal and failure to include the cost associated with working on Plaintiffs' steep roof, both of which Defendant conceded should have been included. Additionally, Plaintiffs point to Defendant's application of its definition of hail damage as further evidence of its sham investigation.

Accordingly, neither Plaintiffs nor Defendant are entitled to summary judgment on Plaintiffs' bad faith claim.

### III. Punitive Damages

Defendant also seeks summary adjudication of Plaintiffs' request for punitive damages. To recover punitive damages under Oklahoma law, "there must be evidence, at a minimum, of reckless disregard toward another's rights from which malice and evil intent may be inferred." *Badillo*, ¶ 66, 121 P.3d at 1106 (emphasis omitted). Viewing the record in the light most favorable to Plaintiffs, the Court finds that the genuine dispute of material facts related to their bad faith claim also precludes summary judgment on the issue of punitive damages. The record herein contains minimally sufficient facts and evidence that could support a reasonable finding that Defendant recklessly disregarded Plaintiffs' rights to a reasonable investigation and timely payment of their claim.

## CONCLUSION

For the reasons set forth herein, the Court orders as follows:

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Summary Judgment [Doc. Nos. 39, 40] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 37] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that within 10 days of this Order, the parties shall submit a joint status report and proposed scheduling order for the remaining unexpired deadlines.

**IT IS SO ORDERED** this14th day of August, 2026.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE